J-S33024-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL SHAYNE BOYD, | |
| Appellant | No. 2333 EDA 2013 |

Appeal from the Judgment of Sentence of May 30, 2012
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0000814-2011

BEFORE:  FORD ELLIOTT, P.J.E., OLSON AND STABILE, JJ.

MEMORANDUM BY OLSON, J.:　　　　　　　　**FILED SEPTEMBER 26, 2014**

Appellant, Michael Shayne Boyd, appeals from the judgment of sentence entered on May 30, 2012, as made final by the denial of post-sentence motions, following his jury trial convictions for two counts of aggravated assault, firearms not to be carried with a license, possessing an instrument of crime (PIC), and possession with intent to deliver a controlled substance (PWID).[1]  Upon careful consideration, we affirm.

The trial court aptly summarized the facts of this case as follows:

> In the early evening hours of January 8, 2008, [Appellant] went to the home of Ricardo Ramos and Julian Trombetti, located at 112 East Nields Street, West Chester, Pennsylvania for the purpose of selling marijuana to Mr. Ramos.  Mr. Ramos previously contacted [Appellant] earlier

---

[1] 18 Pa.C.S.A. §§ 2702, 6106, and 907; 35 P.S. § 780-113(a)(30), respectively.

that same day to set up the drug transaction. [Appellant] arrived at the residence alone and was carrying a black briefcase containing 373.5 grams of marijuana. The marijuana was packaged in several, clear plastic, [Z]iplock bags. While at the residence, [Appellant] sold an unknown amount of this marijuana to Mr. Ramos.

Also present at the residence at the time of [Appellant's] arrival was Julian Trombetti and another individual named Juan Terrero. Mr. Terrero was a friend of Mr. Ramos and Mr. Trombetti and had come to the residence looking to purchase marijuana from Mr. Ramos. Mr. Terrero had previously made plans to get together with his friend, Jose Turbi, to smoke marijuana. While Mr. Terrero was inside the residence he received a call from his friend, Mr. Turbi, who began to question him about the guy inside with the briefcase. Mr. Terrero informed Mr. Turbi that the briefcase contained a large amount of marijuana at which time Mr. Turbi told him he was going to rob [Appellant] of the briefcase. Mr. Terrero attempted to talk Mr. Turbi out of his plan but to no avail. Mr. Terrero left the residence after buying a small amount of marijuana from Mr. Ramos and proceeded to walk to a nearby pizza shop, known as Riggtown, to purchase paraphernalia for him and Mr. Turbi to smoke the purchased marijuana. [Appellant] remained at the residence after Mr. Terrero's departure.

While [Appellant] was still in the residence, Mr. Ramos took out the trash. As he approached the outdoor trashcan, Mr. Turbi jumped from the shadows near the trashcans in an apparent attempt to rob him. However, when Mr. Turbi realized it was Mr. Ramos and not [Appellant] he drew back and asked Mr. Ramos if the guy with the briefcase was still inside the residence. Mr. Ramos stated that he was but told Mr. Turbi to leave the residence and not follow through with the plan to rob [Appellant]. Mr. Turbi walked away and Mr. Ramos assumed the plan was now aborted. Mr. Ramos went back inside the residence but did not inform [Appellant] of Mr. Turbi's presence outside or his criminal intentions.

After approximately 45 minutes [Appellant] exited the residence, taking his briefcase of marijuana with him. Mr. Ramos and Mr. Trombetti went upstairs to conceal the

recently purchased marijuana. Approximately one minute after [Appellant's] departure, Mr. Ramos and Mr. Trombetti heard gunshots from the front of their residence. The two men immediately ran downstairs and opened the front door to observe the commotion. [Appellant] abruptly pulled his car to the front of the residence and yelled out the window to them that he had just been robbed but the person who robbed him didn't get far because he shot him in the back. [Appellant] then proceeded to speed off down Nields Street in his vehicle.

Within minutes of the robbery and shooting, Mr. Turbi drove to the pizza shop and met up with Mr. Terrero. Mr. Terrero could see that Mr. Turbi was in physical pain and also observed [Appellant's] black briefcase in the backseat of Mr. Turbi's car. Mr. Turbi told Mr. Terrero that the man he just robbed shot him. The two men dumped the briefcase in a trashcan behind Mr. Turbi's girlfriend's house in Middle Alley. Middle Alley is located several blocks away from Nields Street and is on the way to Chester County Hospital. Once in the alleyway, Mr. Turbi removed his leather coat, which revealed a single gunshot wound to his upper right back.

After the two men hid the briefcase in the trashcan, Mr. Terrero drove Mr. Turbi to Chester County Hospital. Several hours later, Mr. Turbi was flown to Temple University Hospital's Trauma Center to have his gunshot wound treated. Mr. Turbi survived the shooting but the bullet penetrated Mr. Turbi's upper back, traveled through his neck hitting the traverse process of his cervical spine and coming to a rest behind his jaw. To date, the bullet remains lodged inside Mr. Turbi's body.

In the hours and weeks following the shooting, [Appellant] bragged to a number of his friends and acquaintances about the robbery and how he shot the robber in the back. He paid his roommate, Sienna Tinus, and her boyfriend to dispose of the weapon (a silver semi-automatic .380 handgun) which she and her boyfriend agreed to do. Several weeks after the shooting, [Appellant] got a tattoo on the upper middle portion of his back. The tattoo depicted [a] caliber .380 [handgun] with one bullet pointing up and one pointing down. According to Ms.

Tinus[,] who testified at trial[,] the tattoo represented a badge of honor for shooting Mr. Turbi.

Trial Court Opinion, 12/3/2013, at 1-3.

On appeal, Appellant presents the following issues for our review:

1. Did the trial court err in concluding that the witness Victor Joiner was entitled to assert his right to remain silent and in precluding [A]ppellant from calling Joiner as a witness at trial in order to produce Joiner's exculpatory testimony before the jury?

2. Did the trial court err in prohibiting cross-examination of Commonwealth witness Terrero on the fact that Terrero was on state parole for an aggravated assault offense committed with a gun, and had previously been convicted of receiving a stolen firearm, when the defense theory in this case was that Terrero and Turbi conspired to commit an armed robbery, and that Terrero had possessed the gun that actually shot Mr. Turbi, and where Terrero had enhanced exposure in this case based on prior weapons offenses?

3. Is [Appellant's] flat five year sentence for [PWID marijuana] illegal, where it was constructed only to comply with an unconstitutional mandatory minimum sentencing provision which violates [A]ppellant's state and federal constitutional rights, including his Sixth Amendment rights, in violation of the rule announced in *Alleyne v. United States*?

Appellant's Brief at 3.

Appellant's first two issues implicate the trial court's evidentiary rulings and our standard of review is well settled:

The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the

result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court over-rides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Fischere*, 70 A.3d 1270, 1275 (Pa. Super. 2013) (internal citations and quotations omitted).

In his first issue, Appellant argues that the trial court erred by denying relief on his motion *in limine* precluding him from calling Victor Joiner to testify because Joiner invoked his Fifth Amendment right to remain silent. Appellant's Brief at 19-21. As Appellant notes, Joiner made two statements to police in 2008 following the crimes at issue. *Id.* at 19. In the first statement, Joiner claimed that Juan Terrero told Joiner that Terrero accidentally shot the victim. *Id.* In the other statement, Joiner told police that Terrero claimed that "an Italian dude" shot the victim. *Id.* Counsel for Joiner argued that "because Joiner had given inconsistent statements in 2008 about who had shot [the victim], any statement he made at trial could create the risk of incrimination." *Id.* Appellant contends there was "no risk of incrimination because the falsity of such statements [made four years before trial], a [m]isdemeanor false statements to police officers, was subject to a two-year statute of limitations." *Id.* at 21. In a footnote, Appellant also maintains that Joiner "waived [his constitutional right] when he gave two separate recorded statements to police about the subject conversation." *Id.* at 21, n.1.

Initially, upon review, we conclude that Appellant has waived appellate review of his opening claim. In his Rule 1925(b) statement, Appellant claimed that "[t]he trial court erred in concluding that Victor Joiner had not waived his right to remain silent[.]" Rule 1925(b) Statement, 9/10/2013, at ¶ 1. Appellant's waiver claim is based on the fact that Joiner gave two statements to the police. Appellant's Brief at 21, n.1. On appeal, however, Appellant relegates this contention to an undeveloped footnote wherein he cites a single case and does not cite to the record. An appellate brief must provide citations to the record and to any relevant supporting authority. *See* Pa.R.A.P. 2119(c); ***Commonwealth v. Berry***, 877 A.2d 479, 485 (Pa. Super. 2005). "The court will not become the counsel for an appellant and will not, therefore, consider issues which are not fully developed in his brief." ***Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa. Super. Ct. 2006). Hence, we find that Appellant waived his original contention by failing to develop that claim on appeal.

On appeal, Appellant presents an alternate legal theory, contending that Joiner did not risk prosecution for making false statements to police because the statute of limitation for that crime had already expired prior to trial. This Court cannot review a case upon a theory different from that relied upon in the trial court, or raised for the first time on appeal. ***Commonwealth v. Thur***, 906 A.2d 552, 566 (Pa. Super. 2006), *citing* ***Commonwealth v. Gordon***, 528 A.2d 631, 638 (Pa. Super. 1987) (holding

that this Court cannot review a theory of error different from the theory presented to the trial court even if both theories support the same basic allegation of error giving rise to the claim for relief). Moreover, Appellant's statute of limitations claim was not included in his 1925(b) statement and is waived for that reason, as well. **Commonwealth v. Hill**, 16 A.3d 484, 494 (Pa. 2011) ("Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court *sua sponte,* and the Rule applies notwithstanding an appellee's request not to enforce it[.]").

Assuming, *arguendo*, Appellant did not waive appellate review, there is no merit to Appellant's contention that Joiner waived his right to remain silent or, alternatively, that expiration of the statute of limitations defeated Joiner's right to invoke his Fifth Amendment privilege. "In examining this issue, our scope of review is plenary, as it is with any review of questions of law." **Commonwealth v. Morley**, 681 A.2d 1254, 1256 (Pa. 1996). In relevant part, the Fifth Amendment states that no person "shall be

compelled in any criminal case to be a witness against himself." U.S. Const.

Amend. V.

> At the outset, we are mindful that the Fifth Amendment privilege against self-incrimination must be given a liberal construction. Even the most feeble attempt to claim a Fifth Amendment privilege must be recognized. [The United States] Supreme Court [has] stated:

>> The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and *it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.* [The United States Supreme] Court has been zealous to safeguard the values which underlie the privilege.

***Commonwealth v. Molina***, 33 A.3d 51, 63-64 (Pa. Super. 2011) (internal

citations, quotations, ellipsis, and original brackets omitted) (emphasis in

original).

Joiner's counsel stated that Joiner "wish[ed] to exercise his Fifth

Amendment privilege in this case." N.T., 4/5/2012, at 11. Joiner gave

police two different statements about the shooting in this matter. ***Id.*** at 12-

14. Counsel argued:

> Your Honor, there are two different statements. Assuming that [Joiner] is compelled to testify, he is going to be testifying falsely in one of those two statements. […I]n my discussions briefly with [the Commonwealth], the word "perjury" was mentioned. If [Joiner] testifies under oath here, contrary to one of those two statements, certainly it raises the spectre of possible perjury prosecution. And, I have to advise him very cautiously that if there's the

potential for a charge, and I'm not saying it's a great potential or lesser potential, that's for Your Honor to decide, that the [F]ifth [A]mendment is appropriate if he wishes to invoke it, which he informed me he did.

*Id.* at 15. The trial court determined that the "two statements place Mr. Joiner in a Catch-22 situation. If he is compelled to testify, if he says anything contrary to either of those statements, he has subjected himself to prosecution for perjury or unsworn falsification to authorities." *Id.* at 30.

We agree. Mindful that the Fifth Amendment is to be liberally construed, Joiner's risk of perjury or unsworn falsification to authorities was clear. Joiner made statements to police in 2008. *Id.* at 13-14. The statute of limitations for perjury, 18 Pa.C.S.A. § 4902, and/or unsworn falsification to authorities, 18 Pa.C.S.A. § 4904, is five years. *See* 42 Pa.C.S.A. § 5552(b). Hence, had Joiner testified at trial in April 2012, he could have been subjected to criminal prosecution. There is no basis for a finding of waiver of Joiner's Fifth Amendment privilege as originally presented by Appellant. As such, we discern no abuse of discretion by the trial court in allowing Joiner to exercise his constitutional right to not testify. Thus, Appellant has waived this issue, but it is otherwise without merit.

In his second issue, Appellant contends that the trial court improperly granted the Commonwealth's oral motion *in limine* precluding cross-examination of Juan Terrero regarding the factual predicate of the witness' two prior convictions for aggravated assault and receiving stolen property. Appellant's Brief at 22-26. Both crimes involved firearms. *Id.* at 22. As

Appellant recounts, "[t]he trial court held that only the fact of conviction was admissible, and not the details thereof, and so excluded all reference to firearms." *Id.* at 22-23. Appellant argues, "the fact that these two prior convictions involved the unlawful use of firearms was the proper subject of impeachment and confrontation because these facts increased Terrero's exposure if he [were] actually charged and convicted of the [r]obbery and shooting [consistent with] the defense theory of the case, and because the fact that the prior convictions involved the unlawful use of a firearm increased the risk that the police would conclude that he had criminal culpability regarding the [r]obbery and shooting involved here." *Id.* at 22.

As previously stated, we review evidentiary rulings for an abuse of discretion or error of law. "Whether Appellant was denied [his] right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Dyarman*, 33 A.3d 104, 106 (Pa. Super. 2011). "Typically, all relevant evidence, *i.e.,* evidence which tends to make the existence or non-existence of a material fact more or less probable, is admissible, subject to the prejudice/probative value weighing which attends all decisions upon admissibility." *Commonwealth v. Dillon*, 925 A.2d 131, 136 (Pa. 2007), *citing* Pa.R.E. 401 and 402. "Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish the witness' motive for testifying."

*Commonwealth v. Hyland*, 875 A.2d 1175, 1186 (Pa. Super. 2005) (citation omitted). "For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere*, must be admitted if it involved dishonesty or false statement." Pa.R.E. 609(a). Rule 609 applies to crimes committed within 10 years. Pa.R.E. 609(b).

There is no dispute that both of Terrero's prior convictions were committed within 10 years of his testimony in this case. An "aggravated assault conviction is not in the nature of *crimen falsi*" and, therefore, is not admissible as a crime of dishonesty or false statement. *Commonwealth v. Moore*, 715 A.2d 448, 452 (Pa. Super. 1998). Receiving stolen property is a crime of *crimen falsi* and admissible under Rule 609. *Commonwealth v. Treadwell*, 911 A.2d 987, 990 (Pa. Super. 2006). "[E]vidence of a prior conviction, if introduced solely to impeach a defendant's credibility, should be limited to the name, time and place and punishment received in the prior offense, in order to minimize the potential prejudice and distraction of issues already inherent in the mention of prior offenses." *Allen v. Kaplan*, 653 A.2d 1249, 1254 (Pa. Super. 1995) (internal quotations and ellipsis omitted), *citing* *Commonwealth v. Jones*, 108, 378 A.2d 471, 477 (Pa. Super. 1977).

Here, the trial court determined:

> In the present case, the fact that Mr. Terrero was currently on state parole and that he had a prior conviction

for receiving stolen property is proper impeachment evidence. Relevant evidence that conforms to Pa.R.E. 609 is generally limited to the nature of the conviction, the date of the offense, the grading of the offense and the sentence imposed as a result of that offense.

Here, Mr. Terrero[] was incarcerated on the aggravated assault charge until his ultimate release on parole in 2005. Although, he was released from custody within the last ten years[,] this conviction is for a crime of violence and not for one that involved dishonesty or false statement. Since it does not reflect upon the veracity of Mr. Terrero, it normally cannot be used to impeach his testimony. However, this conviction is admissible because Mr. Terrero voluntarily disclosed it to the jury during direct examination. However, the underlying predicate facts that gave rise to the convictions are not admissible. Specifically, the fact that the aggravated assault was committed with a gun and that Mr. Terrero had previously been convicted of receiving a stolen firearm is irrelevant in the instant case. For example, it makes no difference whether Mr. Terrero was in receipt of stolen jewelry, electronics or firearms; or whether he used a knife, slingshot or baseball bat to commit the aggravated assault offense. In other words, the predicate facts of the convictions are not relevant to admissibility.

Even assuming arguendo, the defense's theory in the case that Mr. Terrero and Mr. Turbi conspired to commit the armed robbery of [Appellant], and that Mr. Terrero possessed the gun that actually shot Mr. Turbi, the cross-examination of the underlying facts that gave rise to the conviction is still irrelevant and improper. Although, evidence of interest or bias on the part of a witness is admissible and constitutes a proper subject for cross-examination, the impeachment of a witness must still comport with Pa.R.E. 609.

[Appellant] failed to produce any corroborating evidence at trial that Mr. Terrero shot Mr. Turbi. Conversely, Mr. Terrero's testimony expressly refutes [Appellant's] theory that Mr. Turbi and he conspired to rob [Appellant]. Furthermore, Mr. Terrero denied possessing a weapon and shooting Mr. Turbi on January 8, 2008.

> [The trial court's] evidentiary ruling did not preclude [Appellant] from examining whether Mr. Terrero had an improper interest or bias when speaking with police or while testifying at trial. Assuming, the defense's theory in the case that Mr. Terrero lied to the police to cover up his own involvement in the shooting; defense counsel could have elicited that information properly [through a different line of questioning].

> \* \* \*

> However, defense counsel's proposed line of questioning raises a myriad of potential collateral matters. Specifically, cross-examination of Mr. Terrero regarding the underlying predicate facts of his prior conviction could mislead the jury. Essentially, defense counsel is trying to show that Mr. Terrero had a propensity to commit violent crimes with a firearm and that he acted in conformity with this characteristic on January 8, 2008. Because the underlying factual predicate facts do not have the tendency to make a fact in the instant case any more or less probable than it would be without the evidence, [the trial court] properly concluded the evidence was irrelevant.

Trial Court Opinion, 12/3/2013, at 8-9 (internal record and legal citations omitted).

We agree. The trial court appropriately determined that Terrero's prior conviction for receiving stolen property was admissible to impeach the witness, but was limited in scope to the name, time, and place of the offense. Moreover, Terrero's conviction for aggravated assault would not have been admissible but for Terrero's voluntary admission of the crime on direct examination and, again, was limited by the perimeters of Rule 609. Certainly Appellant's counsel was permitted to inquire into any potential bias

or negotiations with the Commonwealth.[2]  However, the factual predicate for Terrero's prior convictions was not within the jury's purview.  Accordingly, we discern no abuse of discretion or error of law in limiting the scope of cross-examination of Terrero.  As such, Appellant's second issue fails.

In his final issue presented, Appellant contends that the trial court erred in imposing a mandatory minimum sentence pursuant to 42 Pa.C.S.A. § 9712.1 because he was convicted of PWID in conjunction with firearm offenses.  Appellant's Brief at 27-29.  He claims that Section 9712.1 "is flatly unconstitutional because it purports to authorize a new and enhanced sentence on the basis of a new and aggravated crime which must be proven to the satisfaction of the fact-finder beyond a reasonable doubt." *Id.* at 28.  For this proposition, Appellant cites the United States Supreme Court's decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013).  Moreover, Appellant claims "the evidence at trial was not sufficient to establish conclusively that [Appellant] possessed a gun while possessing marijuana with the intent to deliver." *Id.*  More specifically, he submits the evidence suggests that he retrieved a firearm only after the briefcase of

_____

[2]  We reject Appellant's reliance on *Davis v. Alaska*, 415 U.S. 308 (1974). In that case, evidence of the witness' prior juvenile adjudication for burglary was entirely excluded from trial.  Here, the trial court permitted the introduction of Terrero's prior convictions.  N.T., 4/3/2012, at 178-179.  The jury had the benefit of Appellant's defense theory before it when passing on guilt.  Thus, the jury could make an informed judgment as to the weight to place on Terrero's testimony.

marijuana was stolen. *Id.* He also maintains that the trial court erred by imposing a flat five year sentence, without setting a minimum or maximum sentence. *Id.* at 26-27.

We determine that this Court's decision in *Commonwealth v. Watley*, 81 A.3d 108 (Pa. Super. 2013) (*en banc*) controls. In that case:

> [..D]uring the pendency of [Watley's] appeal, the United States Supreme Court decided *Alleyne v. United States*, ––– U.S. ––––, 133 S.Ct. 2151 (2013). Therein, the Supreme Court held that the defendant's jury trial rights were infringed where the federal court applied a federal mandatory minimum statute for brandishing a firearm where the fact of brandishing was not presented to the jury or established beyond a reasonable doubt. The *Alleyne* decision expressly overturned *Harris v. United States*, 536 U.S. 545 (2002), a decision that had upheld a challenge to *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), following *Apprendi v. New Jersey*, 530 U.S. 466 (2000).
>
> In *McMillan*, the defendant alleged that Pennsylvania's mandatory minimum statute at 42 Pa.C.S. § 9712, a closely analogous statute to the applicable mandatory statute herein, was unconstitutional because the fact that the defendant visibly possessed a firearm was not presented to the jury and established beyond a reasonable doubt. According to the *Alleyne* Court, a fact that increases the sentencing floor is an element of the crime. Thus, it ruled that facts that mandatorily increase the range of penalties for a defendant must be submitted to a fact-finder and proven beyond a reasonable doubt. The *Alleyne* decision, therefore, renders those Pennsylvania mandatory minimum sentencing statutes that do not pertain to prior convictions constitutionally infirm insofar as they permit a judge to automatically increase a defendant's sentence based on a preponderance of the evidence standard. The court sentenced [a]ppellant under 42 Pa.C.S. § 9712.1, a mandatory minimum statute allowing a judge to increase a sentencing floor based on a preponderance of the evidence finding that the defendant or his accomplice possessed a gun during the commission of PWID.

* * *

[In **Watley**], the jury determined that [Watley] possessed the firearms in question as it found him guilty of two separate firearms violations. The firearms in question were undisputedly located within the same vehicle as the Ecstasy; indeed, one of the guns was found in the same glove compartment as the drugs. Hence, the jury did determine beyond a reasonable doubt the facts necessary to subject [Watley] to the mandatory minimum, *i.e.,* that [Watley] possessed the firearms when he committed the PWID offense.

Nevertheless, in **Commonwealth v. Johnson**, 910 A.2d 60 (Pa. Super. 2006), and **Commonwealth v. Kearns**, 907 A.2d 649 (Pa. Super. 2006), this Court concluded that specific jury findings relative to the charge for which the defendant is being sentenced are necessary where **Apprendi** is implicated. In **Johnson**, the panel addressed a claim that the defendant's sentence of seventeen and one-half years to forty years for attempted murder was illegal where the victim was shot in the foot. The statutory maximum for attempted murder is twenty years absent a finding that the victim suffered serious bodily injury, in which case the maximum increases to forty years. The **Johnson** Court reasoned that any finding by the jury of serious bodily injury for aggravated assault could not be used to infer that the jury found serious bodily injury for the attempted murder charge.

Similarly, the **Kearns** panel, in discussing a jury trial right claim, asserted that a conviction at one count does not establish an element necessary for increasing a sentence at another charge. In **Kearns**, a jury convicted the defendant of involuntary manslaughter and endangering the welfare of children ("EWOC") as well as several other charges. The defendant argued that his jury trial rights were violated as it related to the manslaughter charge because the jury did not find that the victim was under twelve or that the child was in his care, custody or control, and he was sentenced to a higher maximum based on those facts.

- 16 -

The Commonwealth argued that it presented uncontradicted evidence that the victim was two years old and was in the care, custody and control of the defendant. In addition, the Commonwealth maintained that the defendant's conviction for EWOC established that the victim was in his care, custody and control. The panel rejected those arguments, first by stating that the volume of evidence presented does not "stand as a proxy for a specific finding by the factfinder." **Kearns***, supra* at 658. It also found that utilizing a jury finding on another charge for enhancing a sentence required what it labeled "intracase collateral estoppel[,]" *id.* at 659, which it viewed as improper. Finally, the **Kearns** Court asserted that the elements of EWOC did not align with or establish the care, custody and control aspect of involuntary manslaughter. Under the reasoning of the **Johnson** and **Kearns** panels, since juries may render inconsistent verdicts, it is necessary that the element giving rise to the sentencing increase be specifically found by the jury in relation to the count on which the defendant is being sentenced.

However, while we allow inconsistent verdicts, that doctrine is used to prevent overturning convictions that are inconsistent with an acquittal on another charge, not to disregard a jury's factual findings on valid convictions. **See Commonwealth v. Frisbie***, 889 A.2d 1271, 1273 (Pa. Super. 2005) ("this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict."). The fact that we accept a jury's ability to potentially exercise leniency does not require us to disregard, for purposes of sentencing, its uncontroverted determination of facts that subject a defendant to an increased punishment, which under then-existing law did not have to be alleged in the criminal information. Indeed, an acquittal is not considered a specific factual finding. **Commonwealth v. Carter***, 444 Pa. 405, 282 A.2d 375, 376 (1971). More importantly, neither **Johnson** nor **Kearns** involved retroactivity concerns since **Apprendi** was decided well before the defendants' trials in those cases. Phrased differently, the Commonwealth in **Johnson** and **Kearns** could have simply followed **Apprendi***, whereas here, the prosecution was proceeding under prevailing law. A case far more analogous

- 17 -

to the one presented here is **United States v. Cotton**, 535 U.S. 625 (2002).

In **Cotton**, the United States Supreme Court declined to reverse several sentences based on an **Apprendi** claim that was raised for the first time on appeal, where **Apprendi** had not been filed at the time of sentencing. In **Cotton**, a federal grand jury returned an indictment against multiple defendants for conspiracy to distribute and possess[ion] with intent to distribute cocaine and cocaine base. The original indictment specified the charge as involving five or more kilograms of cocaine and fifty grams or more of cocaine base. A subsequent superseding indictment, however, only alleged that there was a detectable amount of cocaine and cocaine base. The amount of cocaine and cocaine base triggered an increased statutory maximum.

A jury convicted the defendants, and the district court found, based on the evidence introduced at trial, that the increased statutory maximum was applicable. While the defendants' case was pending on appeal, the Supreme Court decided **Apprendi**. Thereafter, the defendants contended for the first time that their sentences were invalid because the drug quantity was not included in the indictment or submitted to the petit jury. A divided Fourth Circuit Court of Appeals vacated the sentences based on **Apprendi**, concluding that the federal plain error doctrine applied and that a court is without jurisdiction to impose a sentence for an offense not charged in an indictment. The High Court reversed, first finding that a defect in a federal indictment is not jurisdictional and opining that the evidence establishing the sentencing enhancement was overwhelming and essentially uncontroverted. The court found that no plain error existed and that sentencing the defendant based on facts not included in the indictment or presented to the petit jury was not improper.

Although Pennsylvania law no longer has plain error review, illegal sentencing claims are one of the few remaining vestiges of that doctrine. Accordingly, we find **Cotton** instructive and persuasive. Contrary to the defendant in **Johnson**, who contested the facts necessary to increase his sentencing maximum, namely, whether serious bodily injury resulted from shooting the victim

therein in the foot, [Watley] never disputed the evidence that the firearms were in close proximity to the Ecstasy. Rather, [Watley] challenged that he was the person present in the vehicle who fled the scene, *i.e.*, identity. [Watley] certainly was on notice that the Commonwealth sought to prove that he possessed two firearms and the jury was presented with evidence of those facts. More important, the jury's finding on the two firearms charges in this matter is directly aligned with the requirement under § 9712.1 that the defendant possess a gun, as opposed to the EWOC and involuntary manslaughter elements [at] issue in **Kearns**. Succinctly put, the jury did render a specific finding as to whether Appellant possessed the handguns found in the car; the reason it did not do so in conjunction with the PWID count is that the prevailing law at the time, unlike in **Kearns** and **Johnson**, did not require such a procedure.

Similar to **Cotton**, the uncontroverted evidence in [**Watley**] established that one firearm was located in the same glove compartment as the drugs and another handgun was located on the passenger-side floor in close proximity to the drugs, and the jury determined beyond a reasonable doubt that [Watley] possessed those firearms. Therefore, **the facts necessary to establish application of the mandatory minimum sentence not only were essentially undisputed and overwhelming, they were determined by the jury. Since [Watley] was convicted of PWID and unlawfully possessing two firearms relative to the same incident, the factual predicates for determining the mandatory minimum were proven to a jury beyond a reasonable doubt, and his sentence is not illegal.**

**Commonwealth v. Watley**, 81 A.3d 108, 116-121 (Pa. Super. 2013) (*en banc*) (footnotes omitted).

Here, the jury convicted Appellant of both PWID and firearm offenses arising out of the same criminal episode. As the trial court noted, and the facts adduced at trial revealed, Appellant left the subject residence carrying a briefcase of marijuana and within one minute after his departure, two

- 19 -

eyewitnesses heard gunshots.  Immediately thereafter, the two witnesses also heard Appellant exclaim that he had been robbed, but he had shot the robber in the back.  Due to the rapid succession of events, the trial court properly concluded the PWID and firearm offenses resulted from the same occurrence.

As such, according to **Watley**, the factual predicate for determining the mandatory minimum sentence under Section 9712.1 was proven to a jury beyond a reasonable doubt and Appellant's sentence is legal.  Moreover, it was Appellant's defense theory at trial that Terrero had the gun that shot Turbi; thus, Appellant – like Watley – challenged only identity while on notice that the Commonwealth sought to prove both firearm possession and PWID (marijuana).  Finally, we reject Appellant's suggestion that the firearm may have been retrieved from a location separate and apart from the marijuana.   We are satisfied under the circumstances of this case that the jury found, beyond a reasonable doubt, that Appellant possessed a firearm in connection with PWID, as required by Section 9712.1.  "[F]or purposes of Section 9712.1(a), 'physical possession or control' means the knowing exercise of power over a weapon, which may be proven through evidence of a direct, physical association between the defendant and the weapon **or evidence of constructive control**. **Constructive control, in this setting, an analogue to constructive possession, entails the ability to exercise a conscious dominion and the intent to do so**."

***Commonwealth v. Hanson***, 82 A.3d 1023, 1036-1037 (Pa. 2013) (emphasis added).

Moreover, our Supreme Court has recently determined that imposition of a flat five-year sentence for PWID is legally proper when applied with the mandatory minimum sentence provision under 42 Pa.C.S.A. § 9712.1. The Pennsylvania Supreme Court has opined:

> [U]nder 1 Pa.C.S. § 1933, the general provision of 42 Pa.C.S. § 9756(b)(1), regarding minimum and maximum sentences, must yield to the specific sentencing provisions of Section 9712.1(a) and Section 780–113(f)(2), respectively requiring a five-year mandatory minimum sentence and a maximum sentence of no more than five years for a violation of Section 780–113(a)(30). As such, the trial court properly imposed a flat, five-year prison sentence for [a] PWID conviction.

***Commonwealth v. Ramos***, 83 A.3d 86, 94 (Pa. 2013). For all of the foregoing reasons, Appellant's final issue lacks merit.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/26/2014

- 21 -