J-A17012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PATRICK JOSEPH MCLAINE | |
| Appellee | No. 1685 EDA 2013 |

Appeal from the Judgment of Sentence June 4, 2013
In the Court of Common Pleas of Northampton County
Criminal Division at No(s): CP-48-CR-0000830-2012

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and OTT, J.

MEMORANDUM BY OTT, J.:                     **FILED NOVEMBER 13, 2015**

The Commonwealth appeals the June 4, 2013, judgment of sentence imposed after a jury convicted Patrick J. McLaine and his co-defendant, Robert J. Kearns,[1] of theft by failure to make required disposition of funds received.[2]  On appeal, the Commonwealth argues the trial court erred in grading McLaine's conviction as a misdemeanor of the third degree because

---

[1]  The Commonwealth has filed an appeal with respect to Kearns at Docket No. 1682 EDA 2013.  Kearns and McLaine have also filed cross-appeals at Docket Nos. 2480 EDA 2013 and 2600 EDA 2013, respectively.  On April 2, 2015, the Commonwealth filed an application for consolidation of all four companion cases.  By *per curiam* order entered on April 21, 2015, this Court denied the Commonwealth's application for consolidation, but directed that the appeals be listed consecutively.

[2]  18 Pa.C.S. § 3927.

the co-defendants admitted the value of the funds at issue was in excess of $2,000.00. Based on the following, we affirm.

The facts and procedural history are as follows. McLaine and Kearns were the two principals of a company known as Municipal Energy Managers, Inc. ("MEM"). On July 2, 2007, McLaine and Kearns entered into a written contract with the Township of Bethlehem, a municipality in Northampton County ("Bethlehem Township"). The contract provided MEM would act as an agent for Bethlehem Township to facilitate the purchase of township street lights from the public utility company, Pennsylvania Power and Light ("PPL").[3] McLaine and Kearns drafted the contract and determined the total cost to do all work necessary for Bethlehem Township to purchase the street lights from PPL. The price of $1,001,230.00 was to be used to pay any and all costs of the purchase including, but not limited to, paying PPL for the transfer of the street lights. The contract provided performance was to occur within a period of 12 to 18 months, ending anywhere between July 2, 2008 and January 2, 2009, and was considered completed when ownership of the street lights was transferred from PPL to the township. Additionally, the contract stated the township would be receiving the lower utility rate by January of 2009. For its services, MEM was to receive a five percent commission of $50,060.00.

---

[3] The purpose was to save the township money by accessing a lower utility rate for municipal-owned streetlights.

To begin performance, MEM requested Bethlehem Township pay them $832,460.00. On July 3, 2007, McLaine and Kearns received a check in the requested amount. On July 5, 2007, the check was deposited into a general corporate bank account in the name of MEM, which McLaine and Kearns jointly controlled.[4]

In October 2007, McLaine and Kearns wrote checks from the MEM general corporate account to themselves. Specifically, on October 1, 2007, a check was made payable to Kearns for the amount of $366,600.00. That same day, a check was issued to McLaine in the amount of $499,945.000, as well as a second check to McLaine in the amount of $109,059.00. All three checks were signed by both defendants. At trial, McLaine and Kearns testified these checks represented bonuses paid to themselves.

On August 5, 2009, PPL sent a letter to Kearns, stating that it had learned MEM was performing unauthorized work on its streetlights. The letter identified Bethlehem Township as one of the affected municipalities.

Despite receiving the funds, MEM did not contact PPL to initiate the transfer of street lights until August 10, 2009, eight months past the 18-month completion deadline, by sending a letter announcing its intent to purchase the streetlights. On September 17, 2009, PPL sent a letter to

---

[4] With respect to the contract, there was no escrow requirement that the Bethlehem Townships funds be held separately from MEM's other accounts. *See* N.T., 1/10/2013, at 162 ("The evidence reveals that the Commonwealth admits there was no escrow requirement.").

MEM, outlining the estimated costs of the total project, which was to be $271,180.00, well below MEM's estimate of $1,001,230.00. The letter also requested MEM make a deposit to PPL in the amount of $22,525.00 in order to initiate the process of the light transfer. McLaine and Kearns did not respond to PPL's request or make the payment. On October 5, 2009, MEM sent Bethlehem Township an invoice for $131,438.00. The township did not pay it.

In January of 2010, a grand jury investigation was conducted in relation to the matter. On January 26, 2012, the grand jury returned a presentment, recommending the arrest of McLaine and Kearns on the charges of theft by failure to make required disposition of funds received, misapplication of entrusted property, and criminal conspiracy.

A criminal complaint was then filed on February 16, 2012. As noted above, the two men were tried together. The joint trial began on January 7, 2013. On January 11, 2013, the jury found McLaine and Kearns guilty of theft by failure to make required disposition of funds received, but not guilty of the other two charges.

On April 12, 2013, and April 19, 2013, McLaine and Kearns, respectively, were both sentenced to a term of 16 of 60 months' incarceration, 60 months of probation, and restitution in the amount of $832,460.00. The court graded the theft offense as a third-degree felony

pursuant to 18 Pa.C.S. § 3903 (grading of theft offenses) on the basis that the value of the theft was in excess of $2,000.00.

On April 24, 2013, McLaine and Kearns filed motions challenging the trial court's grading of the offense as a third-degree felony pursuant to *Apprendi v. New Jersey*, 530 U.S. 466 (2000). They argued that the verdict slip could not support a felony conviction because it did not require the jury to determine the value of the property that gave rise to the convictions, *i.e.*, the commencement check issued by Bethlehem Township. The trial court agreed and on May 31, 2013, it granted the motion.

On June 4, 2013, the court re-sentenced McLaine and Kearns with regard to the theft offense, grading it as a third-degree misdemeanor, and ordered them to serve a term of six to 12 months' incarceration, 60 months' probation, a fine of $2,500.00, and restitution in the amount of $832,460.00. The Commonwealth filed this appeal on June 7, 2013.[5, 6]

_____

[5] The court did not order the Commonwealth to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b). On June 14, 2013, the trial court issued an opinion under Pa.R.A.P. 1925(a).

[6] In McLaine's appellee brief, he contends the Commonwealth's appeal should be quashed because the Commonwealth filed a notice of appeal prior to his motion for reconsideration and prior to the amended sentencing, but did not renew the notice of appeal following the re-sentencing. *See* McLaine's Brief at 9-10. We conclude that although the Commonwealth's notice of appeal was premature because the trial court had not ruled on the post-sentence motions in their entirety, the appeal was perfected once the court entered the amended judgment of sentence. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but

*(Footnote Continued Next Page)*

Subsequently, on June 13, 2013, McLaine and Kearns filed a motion for reconsideration of sentence. On July 31, 2013, the trial court entered an order, modifying their sentences to a consecutive period of probation of 12 months rather than 60 months. The remainders of their sentences were not changed.

In its sole issue, the Commonwealth complains the trial court erred in grading McLaine's conviction on the charge of theft by failure to make required disposition of funds received as a misdemeanor of the third degree, and concluding that "the failure to submit a special interrogatory to the jury to determine the amount of the alleged theft at issue precluded the court from sentencing" McLaine for his convictions graded as third-degree felonies. Commonwealth's Brief at 15. Specifically, the Commonwealth argues "when a party defendant admits a fact, **Apprendi**[, **supra**,] does not require a jury determination." **Id.** at 16. Moreover, the Commonwealth contends that with respect to a theft crime, "the value of stolen items must only be submitted to a jury when there exists a factual dispute for the jury to determine." **Id.**, *citing* **Commonwealth v. Schamberger**, 788 A.2d 408

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯

before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); **see also Commonwealth v. Swartzfager**, 59 A.3d 616, 618 n.3 (Pa. Super. 2012) (finding defendant's appeal was not quashed pursuant to Rule 905(a)(5) even though he filed a notice of appeal before the court entered a final order denying post-conviction relief).

(Pa. Super. 2001). The Commonwealth maintains the defendants admitted the value of the misappropriated funds because they never disputed they received a check in the amount of $832,460.00 from Bethlehem Township, deposited it into their jointly controlled bank account, and then made personal disbursements in the form of bonuses. *Id.* at 19-20. Furthermore, it asserts Kearns' trial counsel "made numerous references to the value of the money paid to defendants and admitted [the] same"[7] and McLaine's trial counsel made an admission during his opening statement ("He [Mr. McLaine] doesn't deny that Bethlehem Township paid some money for the acquisition of the streetlights[.]"[8]), and offered into evidence two exhibits which acknowledged and admitted receipt of the $832,460.00 payment from Bethlehem Township. *Id.* at 31.

Lastly, the Commonwealth contends the court "erroneously is of the view that in order for the 'admission exception' of *Apprendi* to be applicable, the defendants must actually admit their guilt and that they committed a crime." *Id.* at 33. Additionally, it states the court "fails to understand the distinction between admitting the value of the funds at issue, but denying any criminal culpability." *Id.*

---

[7] *See* Commonwealth's Brief at 25.

[8] *Id.* at 31.

We begin by noting the grading of an offense implicates the legality of the sentence. *See Commonwealth v. Tustin*, 888 A.2d 843, 845 (Pa. Super. 2005) (due process constitutional argument was not waived for failure of defendant to raise it with trial court because it involved grading of an offense which implicates the legality of the sentence, a non-waivable sentencing issue).

Our standard of review is as follows:

> A challenge to the legality of a sentence may be raised as a matter of right, is not subject to waiver, and may be entertained as long as the reviewing court has jurisdiction. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated. We can raise and review an illegal sentence *sua sponte.* When we address the legality of a sentence, our standard of review is plenary and is limited to determining whether the trial court erred as a matter of law.

*Commonwealth v. Borovichka*, 18 A.3d 1242, 1254 n.8 (Pa. Super. 2011) (internal citations and quotation marks omitted).

In *Apprendi*, the United States Supreme Court held that the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, as applied to the states through the Fourteenth Amendment, require consideration as follows:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. . . . "It is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established beyond a reasonable doubt."

*Apprendi*, 530 U.S.at 490, *quoting* **Jones v. United States**, 526 U.S. 227, 252-253 (1999)).

In **Cunningham v. California**, 549 U.S. 270 (2007), the Supreme Court provided the following supplemental explanation regarding the *Apprendi* holding:

> "Our precedents make clear . . . that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or **admitted by the defendant**. . . .   In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.  When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' . . . and the judge exceeds his proper authority."

*Cunningham*, 549 U.S. at 283, *quoting* **Blakely v. Washington**, 542 U.S. 296, 303-304 (2004) (emphasis added).  As mentioned, there is no Sixth Amendment violation where the defendant admitted the fact in question. **See Commonwealth v. Belak**, 825 A.2d 1252, 1256 n.10 (Pa. 2003) (concluding no **Apprendi** relief due based upon a failure to submit question to jury regarding whether victims were home during burglaries and when the defendant previously stipulated to that fact).

Turning to the present matter, the sentence at issue was imposed on McLaine's conviction of theft by failure to make required disposition of funds

received under Section 3927.[9] Section 3903 sets forth the applicable grading for the theft offenses, in relevant part, as follows:

> **(a.1) *Felony of the third degree.* –**
>
> Except as provided in subsection (a) or (a.2), theft constitutes a felony of the third degree if the amount involved exceeds $2,000, or if the property stolen is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle, or in the case of theft by receiving stolen property, if the receiver is in the business of buying or selling stolen property.
>
> …
>
> **(b) *Other grades.* –**
>
> Theft not within subsection (a), (a.1) or (a.2), constitutes a misdemeanor of the first degree, except that if the property was not taken from the person or by threat, or in breach of fiduciary obligation, and:
>
> …
>
> **(2)** the amount involved was less than $ 50 the offense constitutes a misdemeanor of the third degree.

---

[9] Section 3927 defines the theft crime as follows:

> A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S. § 3927(a).

18 Pa.C.S. § 3903.

In granting McLaine's (and Kearns') post-sentence motions, the trial court found the following:

> Here, the Court imposed identical standard range sentences based on upon [McLaine's and Kearns'] presumptive conviction for Theft as a felony of the third degree. Our justification for these sentences, as set forth in the criminal information, was [McLaine's and Kearns'] conversion of the $832,460 commencement check issued by Bethlehem Township.
>
> During the trial, we directed all of the parties to submit proposed jury instructions. The Commonwealth's proffer did not include Pa.S.S.C.J.I. 15.3903, and we adopted the Commonwealth's proposed verdict slip without revision or objection in our charge.
>
> The verdict slip itemized the three crimes at issue. The second itemized crime, Misapplication of Entrusted Property ("Misapplication"), included a supplemental interrogatory requiring the jury to determine whether the value of the stolen property was more than $50 or less than $50 upon a finding of guilt. The first itemized crime, Theft, did not include a similar provision. The jury convicted [McLaine and Kearns] of Theft and acquitted them of Misapplication.
>
> Given the amount of money at stake, it is almost certain that, if asked, the jury would have determined that the value of the converted property exceeded $2,000, the threshold for a conviction of Theft as a felony of the third degree. We can see no rational basis upon which the jury could have convicted [McLaine and Kearns] of Theft without also finding that the property exceeded this threshold value. Nevertheless, the Pennsylvania appellate authority is clear:
>
>> "No matter the volume of evidence presented, nor the quality of the evidence, or even a lack of contrary evidence, the production of evidence cannot stand as a proxy for a specific finding by the factfinder."

> *Commonwealth v. Kearns*, 907 A.2d 649, 658 (Pa. Super.
> Ct. 2006).[10]
>
> "If the preceding were not true, then irrespective of the
> jury's verdict an acquittal could be set aside if a reviewing court
> concluded that the premise of guilt had been conclusively
> established…. Of course, this is not the law, nor could it be if we
> are to preserve the constitutional right to trial by jury." *Id.*
>
> We are not at liberty to disregard this unambiguous
> declaration from our Superior Court. In the absence of a specific
> jury finding, we are obligated to re-sentence [McLaine and
> Kearns] under the default property value of "less than $50."
> *Commonwealth v. Dodge*, 599 A.2d 668 (Pa. Super Ct. 1991).
>
> Our research discloses two recognized exceptions to this
> rule: stipulations of fact, *Commonwealth v. Panko*, 975 A.2d
> 1189 (Pa. Super. Ct. 2009), and party admissions.
> *Commonwealth v. Johnson*, 961 A.2d 877 (Pa. Super. Ct. 2008).
> However, neither exception is applicable in this case. It is
> undisputed that, while [McLaine and Kearns] did not contest the
> face value of the commencement check, they did not stipulate to
> it or admit to it at any point during the trial.

Order, 5/31/2013, at 6-8.

In its Rule 1925(a) opinion, the court further opined:

> In the accompanying Statement of Reasons, we
> acknowledged that the jury almost certainly would have
> determined that the value of the converted property exceeded
> $2,000, the threshold for a felony Theft conviction.
> Nevertheless, we concluded that the clear appellate guideline
> required us to re-sentence [McLaine and Kearns] according to
> the default property value of "less than $50." *See*
> *Commonwealth v. Kearns*, 907 A.2d 649 (Pa. Super. Ct. 2006);
> *Commonwealth v. Dodge*, 599 A.2d 668 (Pa. Super. Ct. 1991).

---

[10] The defendant in **Kearns**, **supra**, is not McLaine's co-defendant in the
present matter, and there is no indication from the record of any relation.

The Commonwealth has taken exception to our conclusion. On June 4, 2013, the Commonwealth filed a Motion to Preserve Issues for Appeal. Therein, the Commonwealth maintains that we erred in not concluding that [McLaine's and Kearns'] acknowledgment that they received the $832,460 commencement check from Bethlehem Township and deposited it into their corporate account was tantamount to a concession that they had also converted this sum. According to the Commonwealth, this "admission" obviated the need for the jury to determine [] the value of the converted property.

We submit that our Order and Statement of Reasons is both correctly decided and sufficiently comprehensive for appellate review. Nevertheless, we will briefly address the assertions raised by the Commonwealth. We respectfully submit that they misapprehend the question presented.

[McLaine and Kearns] vigorously protested their innocence at every stage of this proceeding. They consistently asserted this case is a civil matter for breach of contract rather than a criminal matter for conversion of public property.

At the preliminary hearing stage, we heard and overruled [McLaine's and Kearns'] motion to dismiss the case on this ground. We concluded, *inter alia*, that the totality of the circumstances supported a *prima facie* finding of criminal intent to defraud.

At the trial stage, Attorney Paul Walker argued on behalf of Mr. McLaine that Pennsylvania Power & Light had used the threat of criminal prosecution to leverage its hardball negotiation strategy with MEM. Attorney Walker used the phrase "a different courtroom, a different day, different lawyers," during his opening and closing arguments to convey his position that the case belonged in civil court, not criminal. Attorney James Swetz argued in a similar fashion on behalf of Mr. Kearns.

Finally, at the post-trial stage, both [d]efendants filed motions challenging the sufficiency of the evidence to sustain their convictions. Among other things, they contend the Commonwealth's failure to establish the commencement check had to be held in escrow is a ground for acquittal.

- 13 -

Accordingly, we submit that, far from conceding the value of the property giving rise to their convictions, [McLaine and Kearns] have steadfastly denied converting any property what[so]ever. As such, we submit that the exception for party admissions espoused by the Commonwealth is inapplicable to this case.

Trial Court Opinion, 6/14/2013, at 2-4 (record citation omitted). We agree with the court's finding.

As indicated above, the court relies on **Kearns**, **supra**, to support its conclusion. In that case, the defendant's convictions stem from the death of his girlfriend's nearly three year-old daughter. The grading of the defendant's crime, involuntary manslaughter, and his sentence were increased because the victim was less than twelve years old and under the defendant's care, custody, or control.[11] There was no dispute at trial whether the victim was under age twelve or in the defendant's control. As such, the age of the victim and the defendant's status were uncontested and obviously proven at trial.

_____

[11] With respect to involuntary manslaughter,

the offense is deemed a misdemeanor of the first degree except where the victim was under 12 years of age and was in the care, custody or control of [the perpetrator] at the time the injuries were inflicted, in which case the offense is graded a felony of the second degree. A misdemeanor of the first degree carries a maximum sentence of five years' imprisonment whereas a felony of the second degree carries a maximum sentence of 10 years' imprisonment.

**Kearns**, 907 A.2d at 653.

- 14 -

On appeal, the defendant argued that "sentencing him in excess of five years' imprisonment on the involuntary manslaughter conviction violated his Fifth Amendment right to trial by jury as set forth in *Apprendi*." *Kearns*, 907 A.2d at 652. The Commonwealth responded, in relevant part, by arguing that "*Apprendi* was not violated because 'the Commonwealth presented uncontradicted testimony at the time of trial that was considered by the jury that the victim was less than 12 years of age, *i.e.* two years and that the victim was in the care, custody and/or control of the Appellant.'" *Kearns*, 907 A.2d at 658 (citation omitted).

A panel of this Court rejected that position, opining:

> [T]he Commonwealth appears to argue that despite the fact that the jury did not render an answer to a special interrogatory, "the Commonwealth did prove beyond reasonable doubt that [the victim] was two (2) years old at the time of her death at the hands of [the defendant] and that she was in the care, custody and/or control of [the defendant,] the person who caused her death." The answer to this argument should be apparent. **No matter the volume of evidence presented, nor the quality of the evidence, or even a lack of contrary evidence, the production of evidence cannot stand as a proxy for a specific finding by the factfinder.** If the preceding were not true, then irrespective of the jury's verdict an acquittal could be set aside if a reviewing court concluded that the premise of guilt had been conclusively established. Indeed, there would be no point in proceeding to jury deliberation in some cases. If the court concluded at the close of evidence that the defendant's guilt had been "conclusively proven," the court would be entitled to enter a guilty verdict directly. Of course, this is not the law, nor could it be if we are to preserve the constitutional right to trial by jury. Moreover, it is axiomatic that "the trier of fact, while passing upon the credibility of witnesses and the weight of the proof, is free to believe all, part, or none of the evidence." *Commonwealth v. Watkins*, 577 Pa. 194, 843 A.2d 1203, 1211 (Pa. 2003). **This principle of law relegates the**

> **factfinding process to the jury, even where the ultimate finding seemingly flies in the face of the uncontradicted evidence**.

*Kearns,* 907 A.2d at 658 (emphasis added; some citations omitted).

Additionally, we find **Commonwealth v. Johnson**, 961 A.2d 877 (Pa. Super. 2008), *appeal denied*, 968 A.2d 1280 (Pa. 2009), instructive. In that case, a jury convicted the defendant of intimidation of a witness and specifically found facts, which elevated the grading of the offense to a third-degree felony. The trial court then imposed a sentence as though the conviction were graded as a first-degree felony. The appellant argued that his sentence "was illegal because the jury had not made a specific finding with respect to the facts in support of elevating the grading of the offense to a first degree felony rather than a third degree felony." **Johnson**, 961 A.2d at 881 (footnote omitted). Moreover, he contended "that, in order to change the grading of the offense, the jury was required to make a finding regarding the level of the underlying crime for which the intimidated witness was due to testify." **Id.**

A panel of this Court affirmed the judgment of sentence after concluding "there was no need for the jury to make a specific factual finding regarding the crime to which [the victim] had been a witness" because the appellant had admitted, through his counsel's closing argument, the facts

which changed the grading of the crime to a first-degree felony. *Id*. at 883.[12] The panel pointed to the following evidence:

> Our review of the record further reveals that [the a]ppellant's counsel admitted, during closing argument, to certain relevant facts pertaining to [the victim-witness] testifying as a witness in relation to the two charges of murder brought against [the a]ppellant's brother. With regard to [the victim-witness], [the a]ppellant's counsel stated: "This is a woman who's testifying against [the appellant's brother,] in a double homicide. You think word didn't get back to them that somebody tried to kill [the victim-witness]? Sure it did." [The a]ppellant's counsel further stated: "[The victim-witness] - and we admit that [she] testified against [the appellant's brother]. I mean that's a matter of record. And that's - in large measure that's what this case is based on."

*Id.* (record citations omitted).

Here, a review of the record reveals the following. The defendants were charged with theft by failure to make required disposition of funds received as a third-degree felony. Both McLaine and Kearns acknowledged they received a commencement check from Bethlehem Township in the amount of $832,460.00 that was deposited into the MEM general checking account. *See i.e.*, N.T., 1/9/2013, at 220 (McLaine's testimony); N.T.,

---

[12] *See also Belak*, *supra* (concluding no merit to *Apprendi* issue based upon failure to submit question to jury regarding whether victims were home during burglaries because the appellant previously stipulated to that fact); *Commonwealth v. Panko*, 975 A.2d 1189 (Pa. Super. 2009) (determining no *Apprendi* relief was due based upon failure to submit jury question regarding whether theft occurred during a natural disaster because the appellant had previously stipulated that the governor declared natural disaster occurred).

1/10/2013, at 15-19 (Kearn's testimony). Nevertheless, their defense, as the trial court points out, was that the subject matter of the proceedings was civil in nature and not criminal. *See* N.T., 1/7/2013, at 93-94; N.T., 1/10/2013, at 167-169. Moreover, Kearns testified about the work completed on behalf of the contract and a subsequent stalemate with the third party, PPL. *See i.e.*, N.T., 1/10/2013, at 57 ("Q: And then [counsel for Bethlehem Township] asked you the next question on line 11. Where … did the money received from Bethlehem Township go? And what was your answer? A: My answer was, we expended it on improvements, on lawyers, on operational costs, and on fighting PPL, on reimbursing Bethlehem Township for expenditures above the cap payment, and any improvements that were made to the system, and to pay for the general operating cost of MEM.").

At the conclusion of trial, the court instructed the jury with respect to the theft offense as follows:

> The Defendants have been charged with theft by failure to make the required disposition of funds received. To find the Defendant guilty of that offense, you must find that each of the following three elements has been proven beyond a reasonable doubt:
>
> First, that the Defendant obtained property, in this case the funds of Bethlehem Township. One obtains [property] by bringing about a transfer or a purported transfer of a legal interest in property whether to himself or herself or to another. In this case, the property is money.
>
> Secondly, that the Defendant obtained this property upon agreement or subject to a known, legal obligation to make a

- 18 -

specified disposition thereof, whether from such property or its proceeds or from his or their own property to be reserved in an equivalent amount.

Third, that the Defendant intentionally dealt with a property obtained as his own and failed to make the required disposition. A person acts intentionally if it is his conscious object to engage in conduct of a particular nature.

It is not necessary to identify particular property as belonging to the victim at the time of the failure of the Defendant to make the required disposition.

If, after considering all the evidence, you find that the Commonwealth has established beyond a reasonable doubt all the elements that I have stated to you, you should find the Defendant guilty of theft. Otherwise, you must find the Defendant not guilty.

N.T., 1/11/2013, at 26-28. To compare, the court also instructed the jury

on the misapplication of entrusted property as follows:

The Defendants have been charged with misapplication of entrusted property. To find the Defendants guilty of this offense, you must find that each of the following three elements has been proven beyond a reasonable doubt:

First, that the defendant disposed of certain property in this case the money of Bethlehem Township.

Secondly, that the property had been entrusted to him as a fiduciary.

And, third, that the defendant disposed of the property in a manner that he knew was unlawful and involved substantial loss to Bethlehem Township, the entity for whose benefit the property was entrusted.

After hearing all of the evidence, if you think that the Commonwealth has satisfied each of these elements beyond a reasonable doubt, you must find the defendant guilty of misapplication of entrusted property as charged. If you find the defendant guilty of misapplication of entrusted property, you

- 19 -

J-A17012-15

should go on to consider whether or not the value of the property was more than $50. Certainly in this case the figures were more than $50, but that is the statutory requirement.

If you find that the value of the property was more than $50, your verdict should say so. If you find that the value of the property was $50 or less, your verdict should also say so.

*Id.* at 39-40.

Furthermore, the verdict slip, read, in pertinent part:

1.   On the charge of **Theft by Failure to Make Required Disposition of Funds**, we the jury, impaneled in the above-captioned matter, unanimously   find the Defendant, Patrick Joseph McLaine

Not Guilty _____

Guilty __X_

2.   On the charge of **Misapplication of Entrusted Property**, we the jury, impaneled in the above-captioned matter, unanimously  find the Defendant, Patrick Joseph McLaine

Not Guilty __X_

Guilty _____

If you find the Defendant guilty of **Misapplication of Entrusted Property**, answer question number 2a.   If you find the Defendant not guilty of Misapplication of Entrusted Property, go on to question number 3.

2a.   On the charge of **Misapplication of Entrusted Property**, we the jury find the value of the property:

was **more** than $50.00. _____

was **less** than $50.00. _____

Verdict Slip, 1/11/2013, at 1-2 (emphasis in original).

Contrary to the Commonwealth's argument, our review of this matter compels us to conclude the trial court did not err in finding that ***Apprendi*** was violated and McLaine's theft offense should have been graded as a third-degree misdemeanor. The evidence establishes the following: (1) the defendants were charged with the theft crime as a third-degree felony; (2) the court did not instruct the jury that they must make a specific finding that McLaine and Kearns committed a theft that exceeded $2,000.00, which would constitute a third-degree felony;[13] and (3) the verdict slip did not indicate the jury must make a specific finding that McLaine and Kearns committed a theft that exceeded $2,000.00.[14]

---

[13] As noted by the trial court, the Commonwealth did not proffer Pennsylvania Suggested Standard Criminal Jury Instruction 15.3903, which provides, in relevant part:

> *A. Grading Based Upon Value of the Property Taken*
>
> 1. If you find the defendant guilty of theft on the basis of the instructions I have just given you, then it will be necessary for you to make a further determination regarding the value of the *[property]*.
>
> 2. First, you should consider whether the Commonwealth has established beyond a reasonable doubt that the value of the *[property]* exceeded $2,000. If you find that it has been established, then indicate that on the verdict slip.

Pa.SSJI (Crim) § 15.3903(a).

[14] It merits mention that with respect to the verdict slip, only one crime, misapplication of entrusted property, included a supplemental interrogatory requiring the jury to determine whether the value of the stolen property was

*(Footnote Continued Next Page)*

Moreover, this case is distinguishable from **Belak** and **Panko** because the defendants did not stipulate to the theft. Furthermore, unlike **Johnson**, McLaine (and Kearns) never specifically admitted, *via* their own testimony or their counsels' opening and closing arguments, to committing a theft in excess of $2,000. Rather, while counsel, like McLaine and Kearns, may have acknowledged the two defendants received and deposited an $832,460.00 check, counsel did not admit McLaine and Kearns used the check "intentionally … as [their] own and fail[ed] to make the required payment or disposition." 18 Pa.C.S. § 3927(a).[15] As indicated **supra**, the defendants'

*(Footnote Continued)* _____

more than $50 or less than $50 upon a finding of guilt. The theft crime did not include a similar provision. In acquitting McLaine of misapplication of entrusted property, the jury **did not** make a finding as to whether the value of the property was in excess of $50.00.

[15] For example, in closing arguments, counsel for Kearns stated:

> Theft by failure to make required disposition of funds received requires that the Defendant, in this case Mr. Kearns, obtained property. Of course Mr. Kearns obtained property for MEM, not Mr. Kearns. Second, that he obtained this property upon agreement or subject to a known legal obligation to make specified payments from this property, the $832,000. Every dollar bill is fungible. Property that is specifically reserved in an equivalent amount. That's what I meant by escrow.

> So you would have to find that the agreement required that this actual $832,000 be used as opposed to any other or that MEM or Mr. Kearns was required to reserve other money to do that by agreement. Doesn't happen. The escrow was never required.

N.T., 1/10/2013, at 163.

defense was no conversion took place because the money was placed in a general business account, commingled with other funds, and that this case concerned a contract dispute between the parties, not a criminal act. As such, the need for a specific finding by the jury regarding the amount of property taken was necessary.

We note the Commonwealth contends that McLaine's and Kearns' acknowledgment of the deposit of the $832,460.00 commencement check should equate to a party admission. However, we reiterate that this Court, in **Kearns**, **supra**, rejected a similar argument and determined that "[n]o matter the volume of evidence presented, nor the quality of the evidence, or even a lack of contrary evidence, **the production of evidence cannot stand as a proxy for a specific finding by the factfinder**.... **This principle of law relegates the factfinding process to the jury, even where the ultimate finding seemingly flies in the face of the uncontradicted evidence**." **Kearns**, 907 A.2d at 658 (emphasis added). Accordingly, absent a specific finding of fact made by the jury and reflected in the verdict, we find no merit to the Commonwealth's argument that the defendants' acknowledgement of depositing the commencement check was sufficient to satisfy the requirements set forth in **Apprendi** and its progeny. Based on the lack of such evidence, including an admission or stipulation by the defendants and a specific finding by the jury, the court originally imposed an illegal sentence under **Apprendi** when it graded McLaine's theft

conviction as a third-degree felony and, therefore, it did not err when it resentenced him to a third-degree misdemeanor crime.

Lastly, we note that in a case the Commonwealth relies on, ***Commonwealth v. Shamberger***, 788 A.2d 408 (Pa. Super. 2001) (*en banc*), *appeal denied*, 800 A.2d 932 (Pa. 2002), a panel of this Court determined that where a factor "concerns the propriety of the grading of the offense which thereby establishes the maximum penalty, and not an enhancement to the sentence beyond the statutory maximum penalty for the theft offenses, … ***Apprendi*** does not apply." *Id*. at 418 n.11.[16] However, it merits mention that the ***Shamberger*** Court discussed ***Apprendi*** in light of the defendant's ineffectiveness challenge regarding counsel's decision to stipulate to the grading of a theft offense as a first-degree misdemeanor based on the fact that the thefts were "from the person" of the victims. *Id.* at 419-420. The panel held counsel's strategy was reasonable because the stipulation that the thefts were from the person prevented the Commonwealth from proving that the value of the stolen goods exceeded $2,000.00, which would have elevated the grading of the offense to a third-degree felony. As such, we find statements that suggest the principles of ***Apprendi*** are not offended when a court classifies an

---

[16] This opinion was subsequently reiterated in ***Commonwealth v. Chambers***, 852 A.2d 1197, 1200 (Pa. Super. 2004), *appeal denied*, 871 A.2d 188 (Pa. 2005).

additional fact not reflected in the verdict as a "grading factor" constitute *dicta* and do not govern our consideration of the legality of the sentence imposed in the present matter. **See Kearns**, 907 A.2d at 655 ("In arguing that the key facts that alter the grading of the offense are merely sentencing factors, the Commonwealth seemingly overlooks the United States Supreme Court's stance in **Apprendi** that labeling facts 'sentencing factors' does not control the issue.").

Accordingly, we conclude the Commonwealth's argument fails, and the trial court properly vacated McLaine's original sentence and re-sentenced him to a third-degree misdemeanor crime.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/13/2015</u>