J-A15038-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES DUSTIN MCCAULEY | : | |
| | : | |
| Appellant | : | No. 826 WDA 2021 |

Appeal from the Judgment of Sentence Entered February 17, 2021
In the Court of Common Pleas of Clarion County
Criminal Division at No(s): CP-16-CR-0000201-2020

BEFORE: BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:              **FILED: SEPTEMBER 22, 2022**

James Dustin McCauley ("McCauley") appeals from the judgment of sentence imposed following his conviction for driving under the influence ("DUI") of alcohol—general impairment, accidents involving damage to unattended vehicle or property ("accidents involving damage"), and related summary offenses.[1]  We affirm.

The trial court summarized the relevant factual history as follows:

> In the early morning of February 19, 2020, Officer [Justin] O'Neil received a dispatch informing him that there was a vehicle crash into a porch [at the Bean residence, located at] 204 North Second Avenue in Clarion Borough.  Upon arrival, Officer O'Neil observed a 2016 black GMC Yukon against the front porch of the residence with the engine running, the vehicle still in drive, the headlights on, and [McCauley] unconscious in the driver seat. Officer O'Neil repeatedly knocked on the window and flashed his light into the SUV to wake [McCauley] up, however, [McCauley] failed to respond.  Consequently, Officer O'Neil climbed in the SUV

_____

[1] **See** 75 Pa.C.S.A. §§ 3802(a)(1), 3745(a), 3714(a), 3301(a).

through the unlocked back door of the vehicle, put the vehicle into park, and unlocked the front passenger door so that he could check on [McCauley's] condition. At this time, the fire department arrived on scene and opened the front passenger door, while making sure [McCauley] wouldn't fall out of the vehicle. Officer O'Neil attempted to communicate with [McCauley] verbally, but he did not respond until Officer O'Neil shined his flashlight at him and grabbed [McCauley's] arm.

Officer O'Neil testified that [McCauley] noted that the officer was a part of the Clarion Borough Police Department and "reiterated that he was being good because he wasn't driving. He wasn't driving because he had been drinking. That conversation went on for a little while. [McCauley] did not believe he crashed his vehicle." Officer O'Neil stated that no one else was at the scene and [McCauley] made no statements as to who would have been driving. Officer O'Neil testified that [McCauley] "had glassy, blood-shot eyes, his speech was very slurred, and he had a strong odor of an intoxicating beverage coming from him." Michael Chesterfield, a Clarion Borough firefighter also testified that "[t]here was an odor of alcohol present." Officer O'Neil testified that [McCauley] was assisted out of the SUV by himself and a paramedic because [McCauley] was unsteady on his feet. Afterwards, while searching for the vehicle's registration, Officer O'Neil found one (1) half-full, open container of Bud Light in the driver's side door and two (2) empty beer cans in the center console. Officer O'Neil testified that[,] around this time, the paramedic asked for his assistance due to [McCauley] being uncooperative. Officer O'Neil testified that [McCauley] began stating he did not believe he had crashed and wanted out of the ambulance. Officer O'Neil did not perform a field sobriety test on [McCauley] but did transport him to the Clarion Hospital to be looked at and have a blood draw—which [McCauley] ultimately refused. Officer O'Neil did not pursue a search warrant for the blood draw upon taking [McCauley] to the station, where he continued to deny he crashed.

Officer O'Neil testified that at approximately 6:43 [a.m.] in the morning, he received another dispatch to respond to 8 South Second Avenue for a reported hit and run. At this location, Officer O'Neil testified that he "observed a red 1995 Honda Civic that was registered to the occupants of that residence [and] was damaged." He also testified that he saw tracks through their yard,

across Main Street that led to where [McCauley] had crashed the SUV at 204 North Second Avenue.

[McCauley] testified that leading up to the crash, "I was completely fine." He denied he was under the influence of alcohol when he crashed his vehicle. [McCauley] testified that after the crash, he remembered he was driving the SUV prior to crashing, but remembered nothing about the actual crash. [McCauley] testified that he went to be examined by a cardiologist . . . [who] informed [McCauley] he did not have a heart problem and recommended he see a neurologist instead. [McCauley] testified that the neurologist . . . recommended he take the medication Keppra, [an anti-epileptic medication to prevent seizures,] as [McCauley] has damage to his temporal and frontal lobe reportedly from a vehicle crash that occurred in 2011. [McCauley] testified that he now believes he had a seizure on the night of the crash. [McCauley] also explained that he went to see a second neurologist because he felt he didn't need the medication, and he needed his PennDOT papers signed in order to have his license reinstated after the reported seizure. The license was suspended after [McCauley] reported to doctors that he believed he had a seizure on the night of the accident which caused him to crash. The second neurologist changed his medication to Lamictal.

[McCauley] testified he was not drinking and that the beer cans were left from "whoever was in my vehicle over the weekend." However, [McCauley] testified that he did have a glass of whiskey before he left the car dealership where he worked that night to drive to his friend's house about ten (10) minutes away from the dealership when the crash transpired.

Trial Court Opinion, 6/15/21, at unnumbered 2-5 (citations to the record omitted, paragraph breaks added).

Police charged McCauley with one count of DUI—general impairment, two counts of accidents involving damage, and one count each of careless driving, and failure to keep right. The matter proceeded to a non-jury trial at which McCauley testified that he believed he had a seizure which caused the accidents. The trial court found McCauley's seizure theory far-fetched and

convicted him on all charges. On February 17, 2021, the trial court imposed a sentence of five days to six months incarceration on the DUI count, and fines related to the summary offenses.

Both McCauley and the Commonwealth filed post-sentence motions. McCauley challenged the weight of the evidence supporting his convictions. In addition, McCauley challenged the sufficiency of the evidence supporting his convictions for accidents involving damage. In its post-sentence motion, the Commonwealth asserted that, because this was McCauley's second DUI conviction and, in the instant matter he caused damage to property while DUI, the sentencing enhancement provided by 75 Pa.C.S.A. § 3804(b)(2)(i) mandated a minimum sentence of thirty days in jail, plus fines and conditions.

On June 15, 2021, the trial court entered an opinion and order ruling on the post-sentence motions. The court granted, in part, and denied, in part, McCauley's post-sentence motion. The court vacated the conviction for accidents involving damage as related to crash into the porch of the Bean residence on the basis that police obtained McCauley's information at the scene of the accident. However, the court left intact the remaining convictions. The court granted the Commonwealth's post-sentence motion, finding that the sentencing enhancement applied. The trial court accordingly amended the sentencing order to impose a term of thirty days to six months

of incarceration for DUI—general impairment. McCauley filed a timely notice of appeal and both he and the trial court complied with Pa.R.A.P. 1925.[2]

McCauley raises the following issues for our review:

1. Whether there was insufficient evidence to convict [McCauley] of DUI when there was an equally as likely chance that [McCauley] had a seizure when he was driving the vehicle which caused him to crash?

2. Whether there was insufficient evidence to convict [McCauley] of accidents involving damage to unattended vehicle or property when [McCauley] suffered from a seizure and failed to stop because he was unconscious?

3. Whether [McCauley's] sentence is illegal when the sentencing court sentenced [McCauley] to the thirty (30) day mandatory minimum sentence pursuant to the property damage enhancement for a general impairment DUI: second offense?

McCauley's Brief at 6 (unnecessary capitalization omitted).

McCauley's first two issues challenge the sufficiency of the evidence supporting certain of his convictions. Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary. ***See Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013). When considering a challenge to the sufficiency of the evidence:

> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the

---

[2] The trial court authored a brief Rule 1925(a) opinion addressing one of McCauley's issues; however, it relied on its June 15, 2021 opinion addressing the post-sentence motions for McCauley's remaining issues.

Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted). Importantly, "the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011) (*en banc*).

In his first issue, McCauley challenges the sufficiency of the evidence supporting his conviction for DUI—general impairment. The crime of DUI—general impairment is defined as follows:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1); *see also See Commonwealth v. Clemens*, 242 A.3d 659, 665 (Pa. Super. 2020) (holding that, to prove that a person is

incapable of driving safely, the Commonwealth must demonstrate the defendant was (1) operating a motor vehicle (2) after the defendant had consumed enough alcohol that he was rendered incapable of safe operation of that vehicle). To prove a person is incapable of driving safely, the Commonwealth must prove that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely. *Clemens*, 242 A.3d at 665. Section 3802(a)(1) does not restrict the manner in which the Commonwealth may prove that the accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safely driving. *Id*.

McCauley claims that he presented evidence of his 2011 brain injury, and asserts that the symptoms he displayed after the accident, including confusion, a blank stare, slurred speech, and delayed responses, were consistent with both intoxication and a brain injury. McCauley argues that, because he presented evidence that he may have had a seizure, the Commonwealth was required to disprove that he had a seizure. McCauley contends that "[t]o completely ignore the testimony regarding [his] brain injury and find that he was intoxicated is to base a conviction on conjecture and speculation . . . ." McCauley's Brief at 18 (internal quotation marks omitted).

At trial, the court provided the following explanation for its verdict of guilt for DUI—general impairment:

Looking at the two fact patterns that have been presented to me, I think it's somewhat far[-]fetched and hard to believe that there was a freak isolated, medical incident that occurred on this particular night when this had never happened before and hasn't happened since. And it just so happened in the middle of the night when a vehicle had open beer containers in it. So, I do think the Commonwealth has met its burden. I do think [McCauley] was in physical control and was driving this vehicle after drinking alcohol and that he was rendered incapable of safe driving, obviously, based on the accident that occurred here. I think from the photographs, it's pretty clear to see where the vehicle traveled down the couple blocks on Second Avenue, hit a tree, hit a vehicle, and hit a porch and came to rest there. So, based on all the evidence that was presented, I do find the defendant guilty of [DUI] . . ..

N.T., 1/4/21, at 99-100.[3]

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient circumstantial evidence from which the trial court, sitting as the finder of fact, could conclude beyond a reasonable doubt that McCauley consumed an amount of alcohol which rendered him incapable of safely driving his Yukon. Though Officer O'Neil did not conduct a sobriety field test and McCauley refused a blood draw, McCauley admitted at trial that he had consumed whiskey prior to driving. *See* N.T., 1/4/21, at 84. When Officer O'Neil was finally able to arouse McCauley, he told the officer that "he was being good because he wasn't driving. . . because he had been drinking." *Id*. at 9. The officer testified that

_____

[3] The trial court failed to address McCauley's sufficiency challenge to his DUI—general impairment conviction in either its opinion regarding the post-sentence motions or its Rule 1925(a) opinion. However, as our standard of review is *de novo* and our scope of review is plenary, this omission does not impede our review.

- 8 -

McCauley "had glassy, blood-shot eyes, his speech was very slurred, and he had a strong odor of an intoxicating beverage coming from him." *Id*. at 10-11. Fireman Chesterfield also testified that McCauley appeared to be intoxicated, and there was a strong odor of alcohol emanating from him following the crash. *Id*. at 47, 49. Fireman Chesterfield additionally noted that McCauley's speech was "slow and delayed," which is consistent with intoxication. *Id*. at 47, 49-50. Officer O'Neil found an open container of beer in the driver's side door and two empty beer cans in the center console of McCauley's vehicle. *Id*. at 12. Finally, McCauley does not dispute the Commonwealth's evidence that, while operating his vehicle, he hit the Honda Civic and crashed his vehicle into the porch of a residence. Accordingly, we conclude that the evidence presented at trial, including all reasonable inferences drawn therefrom, was sufficient to establish that McCauley operated his vehicle after he consumed enough alcohol that he was rendered incapable of safely operating his vehicle. *See* 75 Pa.C.S.A. § 3802(a)(1); *see also Clemens*, 242 A.3d at 665.

The Commonwealth was not required to disprove that McCauley had a seizure. Nor was the judge, sitting as fact finder, required to believe McCauley's claim that he had a seizure on the night of the accident. As explained above, the trial judge was free to believe all, part, or none of McCauley's testimony. *See Orr*, 38 A.3d at 873. Indeed, the trial court rejected McCauley's testimony as non-credible and far-fetched, particularly

given that McCauley had never had a seizure or sought treatment by a neurologist in the nine years following his 2011 car accident. Accordingly, as the evidence was sufficient to support McCauley's DUI-general impairment conviction, his first issue warrants no relief.

In his second issue, McCauley contends that the evidence was insufficient to support his conviction for accidents involving damage. To obtain a conviction for accidents involving damage, the Commonwealth must prove the following:

> The driver of any vehicle which collides with or is involved in an accident with any vehicle or other property which is unattended resulting in any damage to the other vehicle or property shall immediately stop the vehicle at the scene of the accident or as close thereto as possible and shall then and there either locate and notify the operator or owner of the damaged vehicle or other property of his name, address, information relating to financial responsibility and the registration number of the vehicle being driven or shall attach securely in a conspicuous place in or on the damaged vehicle or other property a written notice giving his name, address, information relating to financial responsibility and the registration number of the vehicle being driven and shall without unnecessary delay notify the nearest office of a duly authorized police department. Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S.A. § 3745.

McCauley argues that "neither [he] or his vehicle ever left the scene of the accident as he was crashed into a porch until police awoke him and eventually took him to the hospital in an ambulance." McCauley's Brief at 20. McCauley asserts that he did not notify the Beans of the accident because he was unconscious. McCauley claims that the Commonwealth was required to

disprove that he was unconscious, and therefore failed to meet its burden of proof.

Notably, McCauley's arguments relate to the second accident, which caused damage to the Bean's porch. As explained above, the trial court vacated that conviction because, as McCauley successfully argued in his post-sentence motion, police officers obtained McCauley's information at the scene of the porch crash. As the trial court stated:

> Here, the evidence presented at the time of trial does prove that [McCauley] hit the unattended [Honda Civic] located at 8 South Second Avenue, then proceeded to drive his vehicle across Main Street and into the porch at the Bean residence. While he did not stop to provide the required information to the owners of the vehicle, his information was obtained by police at the scene of the Bean residence. Therefore, [McCauley] can only be found guilty of one count of [accidents involving damage], and not two counts.

Trial Court Opinion, 6/15/21, at unnumbered 8.

As is evident from the record, the trial court vacated McCauley's conviction for accidents involving damage as related to the crash into the porch of the Bean residence. Thus, the only remaining conviction for accidents involving damage pertains to the unattended Honda Civic that McCauley hit before he crashed into the Bean's porch. ***See id***. McCauley does not address his conviction for the damage he caused to the unattended Honda Civic or assert that the evidence regarding that conviction is insufficient. Thus, we deem the issue waived. **See** Pa.R.A.P. 2119 (providing that appellate arguments shall include "such discussion and citation of authorities as are

- 11 -

deemed pertinent"); *see also Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) (holding that where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived).

In his final issue, McCauley challenges the legality of his enhanced sentence under section 3804(b)(2)(i), which we review by employing the following standard:

> [A] claim that implicates the fundamental legal authority of the court to impose a particular sentence constitutes a challenge to the legality of the sentence. If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. Issues relating to the legality of sentence are questions of law, and thus, our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Clarke*, 70 A.3d 1281, 1284 (Pa. Super. 2013) (quotation marks and citations omitted). Further, a claim pertaining to the legality of sentence may be raised for the first time on appeal and is not subject to waiver. *Commonwealth v. Foster*, 960 A.2d 160, 163 (Pa. Super. 2008).

Section 3804(b)(2)(i) applies to a second DUI offense which results in damage to, *inter alia*, a vehicle or other property:

> (b) *High rate of blood alcohol; minors; commercial vehicles and school buses and school vehicles; accidents*.—Except as set forth in subsection (c), an individual who violates section 3802(a)(1) where there was an accident resulting in bodily injury, serious bodily injury or death of any person or damage to a vehicle or other property or who violates section 3802(b), (e) or (f) shall be sentenced as follows:

* * * *

- 12 -

(2) For a second offense, to:

  (i)      undergo imprisonment of not less than 30 days;

  (ii)     pay a fine of not less than $750 nor more than $5000;

  (iii)    attend alcohol highway safety school approved by the department; and

  (iv)     comply with all drug and alcohol treatment requirements under sections 3814 and 3815.

75 Pa.C.S.A. § 3804(b)(2).

McCauley argues that application of the sentencing enhancement provided by section 3804(b)(2)(i) in the instant matter is illegal pursuant to *Alleyne v. United States*, 570 U.S. 99 (2013). The *Alleyne* Court recognized the importance of presenting a criminal defendant with notice of a factor potentially increasing his or her punishment and held that if "a statute prescribes a particular punishment to be inflicted on those who commit it under special circumstances which it mentions, or with particular aggravations, then those special circumstances must be specified in the indictment." *Id*. at 112. The *Alleyne* Court further ruled that "any fact that, by law, increases the penalty for a crime must be treated as an element of the offense, submitted to a jury rather than a judge, and found beyond a reasonable doubt." *Id*. at 116.

Pennsylvania Rule of Criminal Procedure 560 describes the content of a criminal information and requires "a plain and concise statement of the essential elements of the offense." Pa.R.Crim.P. 560(B)(5). The purpose of

the criminal information is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act. *See Commonwealth v. Bickerstaff*, 204 A.3d 988, 995 (Pa. Super. 2019). Criminal informations must be read in a common sense manner and are not to be construed in an overly-technical sense. *Id*. A criminal information is not constitutionally infirm if it notified the defendant of the crime with which he is charged. *Commonwealth v. Jones*, 912 A.2d 268, 289 (Pa. 2006) (explaining that this Court has upheld criminal indictments possessing a flaw and found them to be constitutional because they put the defendant on sufficient notice of the charge against him or her).

McCauley claims that because the criminal information did not mention the sentencing enhancement provided by section 3804(b)(2)(i), the imposition of the sentencing enhancement constitutes an illegal sentence. McCauley further claims that, even if the criminal information included the sentencing enhancement, the imposition of the enhancement was nevertheless illegal because the trial court never made any finding that there was damage to a vehicle or property pursuant to the sentencing enhancement. According to McCauley, the mere fact that the court found him guilty of accidents involving damage at trial did not permit the court to determine post-trial and post-sentencing that McCauley caused damage to property for purposes of the enhancement. McCauley maintains that, once the judge

delivered the verdict, the trial court was foreclosed from finding that the Commonwealth had proved the sentencing enhancement.

In the instant matter, the sentencing enhancement provided by section 3804(b)(2)(i) was not pleaded in the criminal information. Nevertheless, the criminal information charged McCauley with the elements necessary to prove the enhancement: namely, DUI—general impairment under section 3802(a)(1); and a vehicular accident while DUI causing both damage to a vehicle and to other property. Thus, although McCauley was not specifically notified in the criminal information that the Commonwealth intended to seek application of section 3804(b)(2)(i), he was on notice of the factual allegations that would support the application of the sentencing enhancement. Thus, because the criminal information specified the special circumstances necessary to establish the sentencing enhancement provided by section 3804(b)(2)(i), there is no **Alleyne** violation regarding the criminal information.

McCauley additionally argues that, pursuant to **Alleyne**, the trial judge's factual finding that McCauley caused property damage for the purpose of convicting him of accidents involving damage cannot be used for the separate purpose of supporting the application of the enhancement provided by section 3804(b)(2)(i).

We are mindful that a conviction at one count does not establish an element necessary for increasing a sentence at another count. **See**

*Commonwealth v. Kearns*, 907 A.2d 649 (Pa. Super. 2006) (labeling this unauthorized practice as "intracase collateral estoppel" and holding that, since juries render inconsistent verdicts, it is necessary that the element giving rise to the sentencing increase must be specifically found in relation to the count on which the defendant is being sentenced); *see also Commonwealth v. Johnson*, 910 A.2d 60, 68 (Pa. Super. 2006) (finding an illegal sentence where the trial court used the jury's finding of serious bodily injury in relation to the aggravated assault conviction to enhance the defendant's sentence for his attempted murder conviction).

However, unlike *Kearns* and *Johnson*, which involved trials in which a jury sat as fact finder, the instant matter involved a non-jury trial in which the trial court judge sat as the finder of fact. Moreover, in this case, the trial court made a specific factual finding *at trial* that McCauley was guilty of DUI—general impairment and that, while DUI he caused property damage to a vehicle and other property:

> I do think [McCauley] was in physical control and was driving this vehicle after drinking alcohol and that he was rendered incapable of safe driving, obviously, based on the accident that occurred here. I think from the photographs, it's pretty clear to see where the vehicle traveled down the couple blocks on Second Avenue, hit a tree, hit a vehicle, and hit a porch and came to rest there. So, based on all the evidence that was presented, I do find the defendant guilty of [DUI]; . . . the accident to the parked car; and . . . accident resulting in damage to the porch . . ..

N.T., 1/4/21, at 99-100.

Given that the trial court made an explicit finding on the record at trial that McCauley caused both damage to a vehicle and to other property while he was DUI, we conclude that there is no ***Alleyne*** violation. Moreover, because McCauley had a prior conviction for DUI, the sentencing enhancement provided by section 3804(b)(2)(i) mandated a minimum sentence of thirty days in jail, plus fines and conditions. Thus, McCauley's sentence is not illegal.

As none of McCauley's issues warrant relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2022